HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA WYATT and EDNA WILLADSEN,

Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation, PORT ANGELES FORD, LINCOLN, MERCURY, a corporation, and LEROY and JANE DOE MARTIN, a marital community,

Defendants.

Case No. C04-5666 RBL

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. Introduction.

This matter comes before the Court on the Defendant Ford Motor Company's Motion for Summary Judgment on all claims asserted against it by Plaintiffs Lisa Wyatt and Edna Willadsen. [Dkt. #22]. The Court has reviewed the materials submitted in support of, and in opposition to, the summary judgment motion. Plaintiffs have failed to demonstrate the existence of an issue of material fact as to Ford Motor Company's (FMC) liability as a corporate entity separate from Port Angeles Ford (PAF). Because Defendant FMC is dismissed from the action based on these grounds, the Court does not consider alternative grounds for dismissal based on the merits of Plaintiffs' claims at this time.

## II. Facts

FMC is a Delaware corporation with its principle place of business in Dearborn, Michigan. FMC distributes and sells its motor vehicles through an independent dealer network consisting of over 4,000 dealers in North America. PAF is an authorized Ford and Lincoln-Mercury dealer and is a Delaware corporation with its principle place of business in Port Angeles, Washington. PAF is one of 138 "Dealer

1  Development Dealerships" which are separate and independent corporations in which Ford has an
2  ownership interest.  Under this program, FMC finances a portion of the total capitalization required to
3  operate the new corporation. The objective of the program is to allow the operators to repay FMC so that
4  the operator owns 100% of a dealership.  [Dkt. #22, 2:13-21].

5  Dealer Development Dealerships (DD) are expected to operate largely independently.  As a DD,
6  PAF has its own Board of Directors, and as the majority shareholder, FMC has the majority of seats on the
7  Board.  Defendant Leroy Martin, as a shareholder and manager of PAF,  holds a seat on the Board of
8  Directors and manages PAF.  PAF maintains its own banking accounts and lines of credit, officers and
9  directors, issues its own paychecks, files its own taxes, conducts its own board meeting, and makes its own
10 employment decisions. [Dkt. #22, 2-3].  Much of this activity is subject to Board approval, as stated in the
11 Comprehensive Policy Manual ("Red Book"). [Dkt. #24, 2].

12 Plaintiffs, former employees of PAF, assert that they were subjected to a workplace hostile to
13 female managers and employees, and were subject to animosity and hostility on a daily basis which
14 materially affected the employment environment. [Dkt. #1].  Ms. Wyatt started as a PAF salesperson in
15 1999, and in August of 2002 she was denied a promotion to a sales manager position to which she felt she
16 was entitled. [Dkt. #1, ¶3.5].  Plaintiff claims the sales manager position was instead given to a male with
17 lesser credentials.  Ms. Wyatt was promoted to finance manager in March of 2003, and in her new position
18 she claims she was given less pay and bonuses than the prior male finance manager. [Dkt. #1, ¶3.5].  Ms.
19 Wyatt also states in her declaration that she was "made a scapegoat" at one meeting for events out of her
20 control and was "holler[ed]" at by Mr. Martin for taking time off to celebrate her husband's birthday. [Dkt.
21 #38, Wyatt Decl. 3:1]  On August 15, 2003, Ms. Wyatt and Ms. Willadsen were involved in an altercation
22 with Defendant Martin and fellow employee Mark Thompson where Mr. Martin and Mr. Thompson
23 "yelled" at the Plaintiffs and Thompson shook his fist at Ms. Willadsen in a threatening manner. [Dkt. #38,
24 Wyatt Decl. 3:14-18].  Ms. Wyatt terminated her employment with PAF on September 23, 2003.   [Dkt.
25 #38, Wyatt Decl. 4:11-12].

26 Ms. Willadsen worked as officer-manager and secretary-treasurer of PAF from December of 2002
27 until February 11, 2004.  She alleges experiencing verbally and physically threatening behavior on some
28 occasions by management and Defendant Martin. [Dkt. #1, ¶3.15].  Specifically, on February 9, 2004, Mr.

Martin came into her office yelling at her and knocked files out of her hand in a way that Ms. Willadsen felt was threatening. [Dkt. #1, ¶3.21]. Plaintiff Willadsen has stated these incidents caused her severe anxiety. [Dkt. #39, Willadsen Decl. ¶5].

**III.  Discussion**

Plaintiffs assert that FMC was aware of the hostile work environment and harassment of the Plaintiffs, but failed to take prompt or adequate remedial action. [Dkt. #24, 4:10-11]. Because FMC employees hold a majority of seats on the Board of Directors, FMC issued the Red Book to PAF (outlining policies and guidelines for running the dealership), and Board approval is required for many employment and disciplinary actions, Plaintiffs argue that FMC should be liable for the alleged discriminatory actions taken by PAF management and specifically by Leroy Martin, an employee of PAF. Plaintiffs also request the Court pierce the corporate veil because corporate formalities were not always strictly maintained between FMC and PAF. [Dkt. #24, 2-4]. The Court finds that summary judgment is appropriate for FMC. FMC did not exercise the requisite control to be held liable for alleged discriminatory acts of its DD and the evidence on the record does not justify piercing the corporate veil in this case. Although the Court does not consider the Motion for Summary Judgment based on the merits of the Plaintiffs' claim, some of these claims do not have evidence sufficient to raise a genuine issue of material fact and would warrant dismissal as well

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (1987). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e) (1987). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

1  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the
2  truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Elec.*
3  *Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987).

4  The court must resolve any factual issues of controversy in favor of the nonmoving party only when
5  the facts specifically attested by that party contradict facts specifically attested by the moving party.  The
6  nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes
7  that evidence can be developed at trial to support the claim.  *T.W. Elec. Service Inc.*, 809 F.2d at 630
8  (relying on *Anderson, supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and
9  "missing facts" will not be "presumed." *Lujan v. Natl. Wildlife Fedn.*, 497 U.S. 871, 888-89 (1990).

10 .       **B.      Ford Motor Company Liability**

11       Plaintiffs claim that FMC is liable for the actions of Martin in this case because of the special
12  circumstances of the relationship between FMC and PAF.  Specifically, Plaintiffs support their argument
13  for liability by pointing to FMC's control over its subsidiary, including the fact that PAF was run according
14  to the Red Book, many activities and decisions of PAF required board approval, and FMC handled
15  Plaintiffs' complaints.  Defendants cite to numerous precedent in the Washington Supreme Court, 9th
16  Circuit, and the United States Supreme Court in support of their assertion that control of a subsidiary and
17  its board of directors cannot create liability**.**

18       A parent corporation is not liable for the Title VII violations of its wholly owned subsidiary.
19  *Watson v. Gulf & Western Industries*, 650 F.2d 990. 993 (9th Cir. 1981).  In *Watson*, the court explained
20  that there are special circumstances that could warrant holding the parent corporation liable; if the parent-
21  subsidiary relationship is a sham, if there was evidence that the parent participated in or influenced the
22  employment practices of its subsidiary, or if the parent had undercapitalized the subsidiary in a way that
23  defeated potential recovery under Title VII.  *Ibid.*  Plaintiffs seem to imply, by citing this standard set forth
24  in *Watson*, that these special circumstances exist in this case.  Yet Plaintiffs do not offer evidence or even
25  argument that PAF is a sham or was established to avoid a legal duty.  Furthermore, there is not any
26  evidence that PAF was undercapitalized in any way, to the contrary, on two occasions FMC loaned PAF
27  additional operating capital. [Response, p.7; Dkt. #39, Willadsen Decl. ¶9].
28       Plaintiffs assert FMC controls PAF in three ways: 1) by establishing strict and profuse policies

under which the dealership is run; 2) by reserving itself approval authority over virtually all significant PAF decisions and actions; 3) by having the PAF Board, as opposed to Martin or other PAF managers, conduct significant business, and make the significant business decisions, of the dealership. [Dkt. #24 Response, 9:13-17]. Willadsen testified that PAF was run according the Red Book strictures. [Dkt. #39, Willadsen Decl. ¶6]. Although the Red Book was issued by Ford, it simply creates guidelines for management of the subsidiary, similar to guidebooks issued to franchises across the country. These franchises are independent and the parent corporation is not liable for their actions so long as the franchise still controls its day-to-day operations. *Folsom v. Burger King*, 958 P.2d 301, 309 (Wash. 1998). Plaintiffs argue that PAF's, and Martin's, every move was strictly mandated and controlled by the Red Book and that Martin had little discretion in day-to-day operations. While it is true that many management decisions required board approval, as mandated by the Red Book, the fact still remains that the Board of Directors approval is not the legal equivalent to approval by FMC.

Neither reserving approval over PAF actions nor having the Board make significant business decisions gives rise to liability for FMC. It is the function of the Board to manage the business and affairs of a corporation. *See, e.g.*, Del. C. 8 § 141(a); *Int'l Brotherhood of Electrical Workers v. Nat'l Labor Relations Board*, WL 1968356 (9th Cir. 2002). The Court is persuaded by Defendant's arguments that having FMC employees on the board of directors for PAF does not expose FMC to liability. "It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 118 S.Ct. 1876 (1998). Courts generally presume that directors switch to their subsidiary hats and do not retain their parent hats when acting for the subsidiary. *Id*; *see also Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003).

Plaintiffs also assert that Martin is an employee of FMC. This argument fails as Plaintiffs only evidence of this is the fact that Martin's employment was controlled by the Board of Directors and his management was to follow the Red Book guidelines. For the reasons stated above, Martin was not an employee of FMC, despite Board control. It is a well established principle of corporate law that directors and officers holding positions with a parent and subsidiary can and do "change hats" to represent the two corporations separately. *Bestfoods*, 524 U.S. at 69.

1  The protection afforded by the corporate form will be pierced only when there are exceptional
2  circumstances. *Krupp v. Better Homes Const. Co.*, 120 Wash.App. 1039, 3 (2004), *citing Truckweld*
3  *Equip. Co. v. Olson*, 26 Wash.App. 638, 644, 618 P.2d 1017 (1980).  Plaintiffs asks the Court to pierce
4  the corporate veil based on the facts that Board minutes were typed at FMC's offices in California, an
5  FMC employee acted as a Secretary at one meeting before he was a board member, and another FMC
6  employee attended a board meeting before being a member and addressed harassment, stating, "the Board
7  of Directors will not tolerate any infractions."  The Court does not find these facts rise to the level of
8  "exceptional circumstances" which would justify piercing the corporate veil.

9  In 2003, the Ninth Circuit concluded that in almost every case where an "indirect employer" has
10 been held liable under Title VII, the indirect employer was the entity actually performing the discriminatory
11 act. *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 931 (2003).  The one case cited in *Anderson* as
12 the exception was where the circumstances showed that indirect-employer (parent) exercised "a peculiar
13 degree of control" over the direct employer (local school districts).  *See Ass'n of Mexican-American*
14 *Educators v. California*, 231 F.3d 572 (9th Cir 2000).  Plaintiffs do not cite any case law to support their
15 position that having FMC's employees on the PAF Board of Directors or following the guidelines set for
16 the in the Red Book should demonstrate that FMC was actually performing the discriminatory act or
17 exercising peculiar levels of control over the subsidiary.  Therefore, the Court concludes that there is no
18 genuine issue of fact concerning FMC's liability.

19 Because FMC is not liable for the conduct of PAF or its employees, all of the Plaintiffs' claims
20 against FMC are dismissed.  FMC's Motion for Summary Judgment [Dkt. #22] is GRANTED.

21 IT IS SO ORDERED.
22 DATED this 13th day of June, 2006.

26 RONALD B. LEIGHTON
   UNITED STATES DISTRICT JUDGE

ORDER
Page - 6