HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA WYATT and EDNA WILLADSEN,

Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation,
PORT ANGELES FORD, LINCOLN,
MERCURY, a corporation, and LEROY and
JANE DOE MARTIN, a marital community,

Defendants.

Case No. C04-5666 RBL

ORDER GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

## I.    Introduction

This matter is before the Court on Defendants' Motion for Summary Judgment on all claims [Dkt. #s 44 and 46]. Plaintiffs, former employees of Port Angeles Ford (PAF), assert that they were subjected to a workplace hostile to female managers and employees, and were subject to daily animosity and hostility which materially affected their employment environment. [Dkt. #1].  The Complaint includes the following claims: 1) hostile work environment and gender harassment under Title VII and RCW 49.60.030; 2) disparate gender treatment; 3) wrongful constructive employment termination; 4) retaliation; 5) breach of contract; 6) infliction of emotional distress; and 7) negligent supervision and training. [Dkt. #1, 8-10]. Defendants seek dismissal of all claims.  Plaintiffs do not contest the dismissal of their breach of contract claims and this claim is dismissed. [Dkt. #52, 24:4].  Because genuine issues of material facts remain for the majority of the remaining claims, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part, in accordance with the order below.

Plaintiffs have moved to strike portions of Defendants' Brief in Support of Summary Judgment and

ORDER
Page - 1

1    Reply Brief for lack of citation to factual assertions.  Defendants have requested that the declaration of Ms.

2    Socia be stricken for violation of the case schedule.  Both Motions are DENIED.[1]

3    **II.     Factual Overview**

4           Ms. Wyatt started as a PAF salesperson in 1999, and in August of 2002 she was denied a

5    promotion to a sales manager position to which she felt she was entitled. [Dkt. #54, ¶2].  Ms. Wyatt claims

6    the sales manager position was instead given to a male with lesser credentials.  Ms. Wyatt was promoted to

7    finance manager in March of 2003, and in her new position she claims she was given less pay and bonuses

8    than the prior male finance manager. [Dkt. #1, ¶3.5].  Ms. Wyatt also claims that she was "made a

9    scapegoat" at one meeting for events out of her control and was "holler[ed]" at by her supervisor Mr.

10   Martin, for taking time off to celebrate her husband's birthday. [Dkt. #54, Wyatt Decl., ¶6].  On August

11   15, 2003, Ms. Wyatt and Ms. Willadsen were involved in an altercation with Defendant Martin and fellow

12   employee Mark Thompson, during which Mr. Martin and Mr. Thompson "yelled" at the Plaintiffs and

13   Thompson shook his fist at Ms. Willadsen in a threatening manner. [Dkt. #54, Wyatt Decl., ¶8].  Ms.

14   Wyatt terminated her employment with PAF on September 24, 2003.   [Dkt. #54, Wyatt Decl., ¶18].  She

15   was later diagnosed with "Anxiety Disorder NOS." [Dkt. #59, Wyatt Decl., ¶19].

16          Ms. Willadsen worked as officer-manager and secretary-treasurer of PAF from December 23, 2002,

17   until February 11, 2004. [Dkt. #53, Willadsen Decl., ¶2].  She alleges experiencing verbally and physically

18   threatening behavior on some occasions by management and Defendant Martin. [Dkt. #1, ¶3.15].  Further,

19   Ms. Willadsen states that on "at least twenty occasions . . . Martin yelled at, demeaned, and/or intimidated"

20   herself and Ms. Wyatt and "never once" did she observe him similarly treat male employees. [Dkt. #53,

21   Willadsen Decl., ¶8].  Specifically, on February 9, 2004, Mr. Martin came into her office yelling at her and

22   knocked files out of her hand in a way that Ms. Willadsen felt was threatening. [Dkt. #1, ¶3.21].  Plaintiff

23   Willadsen has stated these incidents caused her to suffer severe anxiety. [Dkt. #53, Willadsen Decl. ¶6].

24

25

26          _____

27          [1]Although Plaintiffs' Motion to Strike is denied, the Court agrees that Defendant's brief is not adequately supported with evidentiary citations.  Local Rule 10 for the Western District of Washington requires that "[i]n all cases where the court is to review . . . transcripts, deposition testimony, etc., the parties shall, insofar as possible, cite the page and line of any part of the transcript or record to which the pleadings refer."  For all subsequent motions, the Court requires adherence to this rule as well

28   as Washington's Rule of Professional Responsibility 3.3 which requires candor toward the tribunal with regard to statements of fact and law.

ORDER
Page - 2

1    III.    **Discussion**

2         A.    **Summary Judgment Standard**

3         Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

4    admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

5    fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (1987).  The

6    moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

7    showing on an essential element of a claim in the case on which the nonmoving party has the burden of

8    proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where

9    the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.

10   *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

11   present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R.

12   Civ. P. 56(e) (1987).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

13   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the

14   truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Elec.*

15   *Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987).

16        The Court must view all facts and draw all inferences in the light most favorable to the nonmoving

17   party.  *T.W. Elec. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  The nonmoving party may not

18   merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be

19   developed at trial to support the claim.  *Id.*

20        B.    **Plaintiffs' Claim of a Hostile Work Environment and Gender Harassment**

21        42 U.S.C. §2000e *et seq.,* Title VII of the Civil Rights Act of 1964 is violated when the workplace

22   is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

23   alter conditions of victim's employment and create an abusive working environment.  *Harris v. Forklift*

24   *Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993).  In order to support a claim of sexual harassment

25   under Title VII, the Plaintiff must set forth specific facts indicating that the harassment was so "severe or

26   pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working

27   environment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).  A sexually objectionable

28   environment must be both objectively and subjectively offensive, one that a reasonable person would find

1  hostile or abusive, and one that the victim in fact did perceive to be so. *Id* at 787.

2       The rule is that "the required showing of severity or seriousness of the harassing conduct varies

3  inversely with the pervasiveness or frequency of the conduct." *EEOC v. National Education Association*,

4  422 F.3d 842, 847 (9th Cir. 2005) (*quoting Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).  Title VII

5  does not require plaintiff to prove she suffered injury or defendant's actions seriously affected plaintiffs'

6  psychological harm. *Harris,* 510 U.S. at 22.  Whether an environment is hostile or abusive can be

7  determined only by looking at all the circumstances; including the frequency of the discriminatory conduct;

8  its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

9  unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.   These standards

10  for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility

11  code." *Faraghar*, 524 U.S. at 788 (*citing Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80,

12  118 S.Ct. 998 (1998)).

13       The Ninth Circuit has held that sex- or gender-specific content is not the only way to establish

14  discriminatory harassment; Plaintiffs can also use direct comparative evidence about how the alleged

15  harasser treated members of both sexes. *EEOC v. National Education Association*, 422 F.3d at 844.[2]  In

16  that case, the Court of Appeals reversed the District Court's grant of summary judgment finding that

17  where the record revealed "repeated and severe instances of shouting, 'screaming,' foul language, invading

18  personal space (including one instance of grabbling a female employee from behind), and testimony that

19  there was a "general fear of the women in [the] office," there remained a genuine issue of material fact as

20  to the comparative treatment between genders.

21       Viewed in the light most favorable to the Plaintiffs, the record shows physically threatening and

22  humiliating conduct interfering with Plaintiffs' work performance.  Plaintiffs' evidence includes: a

23  statement from Ms. Willadsen stating, "Mr. Martin started to attack Lisa Wyatt on a regular basis" [Dkt.

24  #36, Ex. N, ¶7]; testimony concerning an incident on 8/15/03 where both Mr. Martin and Mr. Thompson

25  yelled in a threatening manner to both plaintiffs [Dkt. #36, Ex. N]; Ms. Wyatt's statement that she believed

26

27      [2]The Ninth Circuit does not always use such a broad definition in determining whether or not a hostile work environment

28  exists in sexual harassment cases.  For example, in *Dominguez-Curry v. Nevada Transportation Department*, 424 F.3d 1027, 1034 (9th Cir. 2005) (internal citations omitted), the Court stated in dicta that, "[t]he plaintiff also must prove that 'any harassment took place because of sex.'" However, because *EEOC v. National Education Association* is analogous to this case based on the factual background, for purposes of this Motion the Court will adopt its broader definition of what constitutes a hostile work environment.

ORDER
Page - 4

she was being treated differently by Martin as a female was that she had "never seen him speak to Mark Thompson the way he spoke to [her]," [Dkt. #36, Ex. O, 55:17-23]; and Ms. Willadsen's statement that on "at least twenty occasions" Mr. Martin yelled at and/or intimidated both plaintiffs at managers' meetings. [Dkt. #53, ¶8].

In our case, as in *EEOC v. National Education Association*, genuine factual issues remain as to the comparative treatment between genders at PAF. Although the Plaintiffs' evidence is not as strong as in *EEOC v. National Education Association*, statements made by Ms. Wyatt and Ms. Willadsen concerning differentiating pay, benefits, and treatment for men and women must be examined further. Where the conduct in question was, as alleged by Ms. Willadsen, an "almost daily occurrence," a reasonable juror could infer that the employer's pattern of verbal and physical intimidation was sufficiently severe to satisfy the statute. *Id* at 847.

The ultimate question is whether the Defendants' behavior affected women more adversely than it affected men. *Id* at 845 (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998 (1998)). Evidence does not have to be specific as to dates and the exact words spoken, so long as the record provides sufficient details so that a reasonable trier of fact could conclude that discrimination had occurred. *Dominguez-Curry v. Nevada Transportation Department*, 424 F.3d 1027, 1035 (9th Cir. 2005). Whether or not the Defendants' behavior more adversely affected women remains a question of fact to be determined at trial. Defendants' Motion for Summary Judgment as to the hostile work environment and gender harassment claims are DENIED.

**C.    Disparate Gender Treatment**

Although Plaintiffs do not cite or discuss any case law to support their arguments for the disparate treatment claims [See Dkt. #52, 18-21, Dkt. #58, 18-21], "[a]ny indication of a discriminatory motive may suffice to raise a question of fact precluding summary judgment in an employment discrimination case." *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1409 (9th Cir. 2005). Because Plaintiffs' constructive discharge claims remain (see section D *supra*), such claims qualify as an adverse employment action, and Plaintiffs allege that they both observed many altercations with both Mr. Thompson and Mr. Martin yelling at or demeaning female employees, there remains a question of fact as to whether or not Plaintiffs suffered disparate gender treatment. Therefore, summary judgment cannot be granted for this claim. Defendants' Motion for Summary Judgment on Plaintiffs' disparate gender treatment claims are DENIED.

D.      **The Plaintiffs' Claim of Constructive Discharge**

When making a claim of constructive discharge, the Plaintiff must demonstrate that "a reasonable person in [her] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994). This requires a showing of something more than a sexual harassment claim. *Penn. State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342 (2004). Plaintiffs alleging a constructive discharge must show some aggravating factors such as a continuous pattern of discriminatory treatment. *Schnidrig*, 80 F.3d at 1412. To survive summary judgment on a constructive discharge claim, a Title VII plaintiff must show there are triable issues of fact as to whether a reasonable person in her position would have felt that she was forced to quit because of intolerable conditions. *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177 (9th Cir. 2005), *amended and superseded on other grounds,* 436 F.3d 1050 (9th Cir. 2006).

Both Ms. Wyatt and Ms. Willadsen allege Mr. Martin often demonstrated physically threatening mannerisms and verbally harassed many employees, including Plaintiffs. [Dkt. #58, Plaintiffs Response, 20-21]. Although the record supporting this claim is weak, whether working conditions are so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury. *Schnidrig*, 80 F.3d at 1411. Viewing the record in the light most favorable the Plaintiffs, there remains a genuine issue of fact precluding dismissal of this claim at the summary judgment stage. The Court DENIES Defendants' Motion for Summary Judgment on this claim.

E.      **Retaliation Claim**

1.      **Plaintiffs' Prima Facie Case of Retaliation**

To establish a prima facie case of retaliation, a plaintiff must demonstrate: 1) a protected activity; 2) an adverse employment action; and 3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1034 (9th Cir. 2006).

The Ninth Circuit has held that an employee who makes a formal or informal complaint of discriminatory treatment engages in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). In this case, Ms. Willadsen wrote a letter to Ford DD employee Bryon Bowlby the incident on August 15, 2003 involving Ms. Wyatt, Mr. Thompson, Mr. Martin, and Ms. Willadsen and asked that "something be done to protect the employees from this environment." [Dkt. #53, Ex. A]. Ms. Socia stated that both Ms. Willadsen and Ms. Wyatt "spoke out about hostility to women in the workplace" [Dkt. #55,

1   Socia Decl., 12:3-4] and the record indicates that the complaints were considered by the PAF Board of

2   Directors. [Dkt. #39, 5:4-7]. Based on this deposition testimony, the protected activity element of the

3   retaliation claim appears to be satisfied by Ms. Willadsen and Ms. Wyatt.

4         An action is cognizable as an adverse employment action if it is reasonably likely to deter

5   employees from engaging in a protected activity. *Ray*, 217 F.3d at 1243. An adverse employment action

6   does not have to "materially affect the terms and conditions of employment." *Id* at 1242. In fact, the anti-

7   retaliation provision of Title VII is not limited to employment related actions but is broad enough to

8   include any action that would deter "the many forms that effective retaliation can take." *Burlington*

9   *Northern and Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2412 (June 22, 2006). It is important to

10  apply an objective standard. *Id* at 2415. Ms. Willadsen alleges that "the verbal and physical intimidation

11  directed toward [her] continued to escalate." Ms. Wyatt stated that after the incident on August 15, 2003,

12  both Mr. Martin and Mr. Thompson "virtually stopped speaking to [her]." [Dkt. #59, Wyatt Decl., 6:6-7].

13  Viewed in the light most favorable to the Plaintiffs, these actions are likely to deter other employees from

14  engaging in the protected activity, thus the second element is satisfied**.** Based on these allegations, a

15  reasonable juror could infer a correlation between Plaintiffs complaints and the deterioration of their

16  employment situation, satisfying the third element.

17        Plaintiffs have presented a prima facie showing of retaliation.

18        **2.    Defendants' Asserted Legitimate and Non-retaliatory Reason**

19        Once the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to

20  present legitimate reasons for the adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917,

21  927 (9th Cir. 2000). This burden is met by producing admissible evidence which would allow the trier of

22  fact to rationally conclude that the employment decision was not motivated by discriminatory animus.

23  *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731 (9th Cir. 1986). Defendants submit as evidence of their

24  legitimate actions a report by an outside investigator, Bob Fisher, finding that there was "no relevant or

25  credible evidence of sexual harassment or discrimination" in his interviews with the associated parties and

26  "the root causes of the incidents are industry typical." [Dkt. #47, Ex. 6a].[3] Therefore, the burden shifts

27

28        [3]Defendants seem to imply that the legitimate and non discriminatory reasons for the poor treatment of the Plaintiffs
      were Plaintiffs' negative attitude at work and Ms. Wyatt's foul language in the workplace. Although Mr. Thompson in his
      deposition stated that Ms. Wyatt did in fact use this language [Dkt. #47, Ex. #4, 122:21-22], nowhere in the materials before the
      Court is there a record of Ms. Wyatt "admitting" in any way to this behavior. [Dkt. #70, Plaintiffs' Surreply, ¶1]. In a Motion

ORDER
Page - 7

1  back to Plaintiffs to submit evidence showing that Defendants' proffered reason is merely a pretext for a

2  retaliatory motive.

3  **3.    Plaintiffs' Asserted Pretext**

4  Plaintiffs can show pretext either i) indirectly, by showing the employer's explanation is inconsistent

5  or not believable, or ii) directly, by showing that the unlawful discrimination more likely motivated the

6  employer. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), *quoting Godwin v.*

7  *Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998).  Plaintiffs offer their own declarations as well as Ms.

8  Socia's declaration alleging discrimination and retaliation. [Dkts. #53, 55, 59].  According to the Ninth

9  Circuit, Plaintiffs are not required to introduce evidence beyond that offered to establish her prima facie

10 case. *Miller*, 797 F.2d at 732.  Although the record offers little evidence beyond these declarations in

11 support of Plaintiffs' assertions, there remains a factual question as to Defendants' motivations for the

12 actions taken in this case.  Defendants' Motion for Summary Judgment on Plaintiffs retaliation claims is

13 DENIED.

14 **F.    Negligent Infliction of Emotional Distress**

15 A negligent infliction of emotional distress claim requires a showing that the defendant breached a

16 duty and that breach resulted in physical injury or illness.  *See Washington v. City of North Las Vegas*, 161

17 Fed.Appx. 637 (9th Cir. 2005); *Haubry v. Snow*, 106 Wn.App. 666, 31 P.3d 1186 (2001) (a claim for

18 infliction of emotional distress only arises when the claim is based on a separate factual basis from the

19 sexual discrimination claim).  It is only a cognizable claim in the employment context when it does not arise

20 solely from the discriminatory remarks and does not result from employer's disciplinary acts or a

21 personality dispute.  *Chea v. The Men's Wearhouse, Inc.,* 85 Wn.App. 405, 412, 932 P.2d 1261 (1997).

22 The Court in *Chea* held that a separate claim for emotional distress is not compensable when the only

23 factual basis for emotional distress was the same factual basis as the discrimination claim.  *Id* at 413.

24 Plaintiffs in both their Complaint and Response refer to the same factual basis for all claims, including the

25 infliction of emotional distress. Under Washington law, this is duplicative and Plaintiffs are not entitled to

26 double recovery under different legal theories.  Because there is not a genuine issue of material fact alleged

27 by Plaintiffs, Defendants' Motion for Summary Judgment is GRANTED for Plaintiffs' claims of negligent

28

for Summary Judgment evidence will be viewed in the light most favorable to the non moving party, the Plaintiffs, and thus these
inaccurate statements concerning Plaintiff's alleged admission are not taken into consideration at this time.

1  inflliction of emotional distress.

2       **G.    Negligent Supervision and Training**

3       Under Washington law, liability for supervisory negligence is imposed on one who should have

4  known of the negligent acts of a subordinate. *Simmons v. United* States, 805 F.2d 1363, 1371 (9th Cir.

5  1986), *citing La Lone v. Smith*, 39 Wn.2d 167, 171, 234 P.2d 893 (1951)**.**  In this case the Board of

6  Directors' minutes show they had notice and requested that Mr. Martin and Mr. Thompson take anger

7  management classes, which both failed to do. [Dkt. #62, Moote Decl., Ex. #1-3].  The record shows that

8  the Board knew of the situation and the incidents that had taken place.  This is sufficient to create a

9  genuine issue of material fact, Defendants' Motion for Summary Judgment on the negligent supervision

10  claim is DENIED.

11       **H.    Other Claims: Public Policy and Common Law**

12       Plaintiffs' Complaint alleges that the actions of the Defendants violated public policy and common

13  law protections against discrimination or other outrageous conduct in the State of Washington. [Dkt. #1,

14  9:21-24].  Unless the complained of conduct giving rise to these common law claims is different than the

15  conduct giving rise to their statutory claims for hostile work environment and discrimination, such claims

16  are duplicative and warrant dismissal. *Francon v. Costco Wholesale Corp.*, 98 Wn.App. 845, 866, 991

17  P.2d 1192 (2000).  Plaintiffs in their response acknowledge that these claims are duplicative and subsumed

18  by federal claims. [Dkt. #52, 24:4-7].  Because the other federal claims are not dismissed and may go

19  forward to trial, Defendants' Motion for Summary Judgment on these claims is GRANTED and these

20  duplicative claims are dismissed..

21  **IV.  Conclusion**

22       "In evaluating motions for summary judgment in the context of employment discrimination, we

23  have emphasized the importance of zealously guarding an employee's right to a full trial." *McGinest v.*

24  *GTE Service Corp.,* 360 F.3d 1103, 1112 (2004).  "As a result, when a court too readily grants summary

25  judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has

26  determined must be extirpated."  *Id.*  In light of this Court's duty to protect the workplace from

27  discrimination, this case cannot be dismissed at this time.  The evidence produced thus far is sufficient to

28  sustain a motion for summary judgment although it possible or even likely that Plaintiffs may not succeed

on this claims at trial**.**  Defendants' Motion for Summary Judgment is DENIED on Plaintiffs' claims of

1   hostile work environment and gender harassment, disparate gender treatment, constructive discharge,

2   retaliation, and negligent supervision and training.  Defendants' Motion for Summary Judgment is

3   GRANTED on Plaintiffs' claims of breach of contract, negligent infliction of emotional distress, violations

4   of public policy, and common law claims.

5          IT IS SO ORDERED.

6          DATED this 17th day of July, 2006

7

8

9          _____

10         RONALD B. LEIGHTON
           UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 10